The opinion of the court was delivered by
Tod, J.
On the merits of the cause, as well as on the form of *308 action and mode of redress, 1 am in favour of the plaintiffs. I think they are entitled to judgment for the whole debt and interest.
The release having been obtained from strangers residing in another state, obtained by executors and guardians, whose duty it was to protect the woman from imposition, gotten from her after they had sold all the testator’s lands, and well knew that they were paying to her but little more than half of her just share, is nothing. Such a release, thus gotten, is condemned by every case in the books. It is good for one thousand, five hundred, and fifty dollars, the money actually paid, and for no more.
Then, there is in the hands of the defendants a sum of money, amounting with the interest computed to the time of the trial, to one thousand, nine hundred, and forty-three dollars, and eighty-three cents. The defendants claim it as their own, having denied the trust, and still persisting in their denial. But their claim is most groundless; and the plaintiffs are entitled at least to the use and benefit of the money, in some mode beyond all doubt. In a ease of such manifest wrong, there must be some remedy. Wc haye no Court of Chancery to compel the defendants by attachment to purchase land for Mrs. Bixler. There is no court in the state that can use any compulsion in the case, except by issuing an execution for the money. One objection is, that these executors are trustees, and redress ought to be had by removing them and getting others appointed by this court, under the act of the 22d of March, 1825, (Pamph. p. 107,) or by the Court of Common Pleas, under the act of the 14th of April, 1828, (Pamph. p. 453.) Those acts of assembly appear to me wholly inapplicable to the present ease. Here is no accident of death, infancy, lunacy, or other inability of a trustee. Nor can a trustee’s pocketing the trust money as his own be in any possible shape considered as a renouncing or refusal to act. Nor could it ever have been intended that this court, or the Court of Common Pleas should, without a jury, pronounce a man a trustee of money which he claims to hold as his own. Even supposing new executors appointed, who, finding the same advantage to themselves, should insist on the same pretence of title, where would be the end, or how much nearer would these, plaintiffs be to obtaining justice than they were when they began? Besides, what would be the situation of an estate, where an executor should be removed from his office as to one of the children and •legatees of the testator, and continue executor as to all the rest? Further,'we have a plain act of assembly, (3 Sm. L. 296,) directing how and for what reasons executors may be removed from their office, not by us, but by the Orphans’ Court, — and not even by that court in any case whatsoever, provided they are willing and able to give security.
To the argument that this demand is founded on mere equity, and cannot be enforced by any form of action of the common law, I would say that ever since the time of Kennedy v. Fury, (1 Dall. *309 72,) in which a cestui que trust maintained an ejectment in his own name, and I believe long before, mere equitable rights have been every day recovered in our courts. It seems to me that the rules of equity have, by immemorial usage, become rules of property in our state, and cannot, I apprehend, be. now departed from without legislative authority. Cases need not be cited to show how rights purely equitable have been sued for with success in the forms of action known only to the common law, and how relief has invariably been granted wherever it could be granted in any way consistent with those forms; generally by the courts with the aid of a jury, — often without. Not only have conditional judgments repeatedly been given, but in the lessee of Matthews v. Akewright, (2 Binn. 93,) the court, on a general verdict for the plaintiff, and judgment thereon, ordered a stay of execution until the defendant should be secured in his title to another piece of land according to an article of agreement. In the case of Morris’s Executors v. M'Conaghy’s Executors, (2 Dall, 189, 1 Yeates, 189,) the court, on motion, directed a contribution among the several holders of lands bound by the same mortgage.
As to this money going into the hands of John Bixler, the husband, against the express directions of the testator, it is by no means necessary that the money should go into his hands; and if it were to go into his hands, the objection, perhaps, could not very fairly be made by these executors, who, by holding it ten years as to part, as their own, and denying the .trust, have left the legatee no choice but to submit to the injustice, or to sue in the only way in which .the law permits her to sue jointly with her husband. It will not follow from this opinion, that in every case of a legacy guarded like the present, and to be laid out in land, there can be a recovery of the money itself by an action. Here are many special circumstances. The great length of time — the obstinate denial of the executors — their claim of property — the grossness of the advantage which they attempted by procuring the release — the fact that Bixler, the husband, has already honestly laid out, not only all that he received from the executors, but one thousand seven hundred and fifty dollars more of his own money, in purchasing land in the name of his wife, to be held as her own according to the very letter of the will, and his offer here by his counsel, to let the money in question remain in court, to be laid out in the same way. All these things combined, seem to make the plaintiffs’ claim irresistible.
It is argued that assumpsit will not lie against executors, as such, for money had and received by themselves: nor will it. But here the naming the defendants executors in the writ, is mere surplus-age. The judgment is against them, de bonispropriis, and rightly so. This very point came before the court, and was decided in Ruble’s Executor v. Boileau (in error,) 10 Serg. & Rawle,208; and the same decision had been before given upon the same point *310 in Wilson v. Wilson, 3 Binn. 557. I refer also to Gratz v. Simon’s Executors, 1 Binn. 588, and Crotzer v. Russell, 9 Serg. & Rawle, 78. It is a common mode of suing for a distributive share of the personal estate of the decedent. Yet perhaps it would be much better not to name the defendants, in such cases, as executors or administrators. It would avoid many difficulties, and much uncertainty, as to what judgments are binding upon the estate of the decedent. The form of the count is objected to, being general indebitatus assumpsit. It must be confessed that, at first yiew, the observations, in Jordan v. Cooper, 3 Serg, & Rawle, 580, of Tilghman, C. J., as also of Gibson, J., appears exceedingly strong against this form of declaration. But it now strikes me that those observations must be understood as referring exclusively to the action, then in hand, of special covenant, and to other similar cases. Here the money in dispute actually has been received by the defendants. In Miller v. Ord, 3 Binn. 384, a case depending altogether upon equity, and upon very complicated facts, this identical objection was urged by Mr. Dallas, and overruled by the court: Tilghman, C. J., delivering the opinion, and declaring general indebitatus assumpsit to be a count well calculated for the recovery of equitable demands: that in this state, where there is no Court of Chancery, they were bound to encourage those forms of action by which equity may be attained; and that to prevent surprise, from want of notice of particulars, it was the defendants’ business to demand a specification. But, supposing Miller v. Ord to be overruled by Jordan v. Cooper, which I do not believe, yet there appears another conclusive answer to the objection. We are deciding upon a case stated. The declaration is not before us. It is waved and superseded. The parties have agreed to put, and actually have put before us the facts of the case. True, the counsel did reserve their exceptions. But it is a reservation incompatible with the agreement. They cannot, at the very time they, are placing all the facts specifically upon the record, object because the facts are not specifically upon the record. It is an attempt to mix a special demurrer with a case stated. It is without precedent. It can be subservient to no one purpose of justice or law, nor productive of any thing but delay and vexation, thus to .entangle the merits of a 'cause with points of form relative to the wording of á declaration which both parties have agreed to set aside. In all but this one mátter I concur most heartily in the opinion delivered by the judge of the court below. The opinion of a majority of the court is that the judgment for the plaintiffs below and plaintiffs in error be reversed, and judgment be entered for them for the use of the plaintiff, Jlnna Mary, in the sum of one thousand nine hundred and forty-three dollars and eighty-three cents. And, with thé consent of the said plaintiffs, by their counsel-it is ordered that the money aforesaid be paid into the court below, to be laid out, under the direction of the eourt, in the purchase of *311 land, for the said Atina Mary, according to the last will and testament of her late father, Bultzer Kunkle, deceased.
Gibson, C. J.
This action was brought b y Atina Mary Bixler and her husband, to recover a legacy bequeathed by her father to the defendants, his executors, in trust, to lay the same out in land for her use, paying her the interest in the mean time, as, to use the words of the testator, “ her husband, John Bixler, shall have no share of the same.” In pursuance of the trust, the defendants laid out fifteen hundred dollars in land; but having succeeded in procuring a release from the plaintiffs, now set them at defiance. This release is conceded to be void, and the question is whether the plaintiffs are to have judgment for the principal remaining in the defendants’ hands, or only for the interest.
A breach of trusi is not necessarily á forfeiture of the trustees’ right to possess and manage the fund. But one of two things then remains to be done; — either to take the fund into the hands of the court, and cause it to be invested according to the terms of the’will, or suffer it to remain in the hands of the defendants during the husband’s life, compelling them to pay interest pursuant to the directions of the testator. The latter is altogether practicable, and in strict accordance with the will, while the former cánnot be accomplished without exercising powers which have not hitherto been assumed by any court in Pennsylvania. It would be but another step formally to entertain a bill for specific execution. A power to decree a trust, or a contract specifically, would, no doubt, be a most salutary one; for the very case before us is an instance of the impotence of attempts to give entire effect to the principles of equity while trammelled with common law forms. Yet in the whole course of our juridical history, there is not an instance of an attempt to cast these forms off. The legislature have gone on the admitted principle, that forms of procedure, in derogation of the common law, cannot be adopted without a legislative grant, and that the constitution was framed on the same principle, is apparent from the clause which limits the chancery powers of the present courts to certain specified objects. It seems to me, therefore, we can give’ the plaintiffs nothing more than the interest, leaving the principal in the hands of the defendants, pursuant to the directions in the will.
Huston J. concurred with Gibson, C. J.,
Judgment reversed, and a different judgment entered, as stated in the court’s opinion.